UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL L. CROTHERS,

                Plaintiff,        Civil Action No. 16-12500
                                   Honorable Gershwin A. Drain
                                   Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 18]**

Plaintiff Jill Crothers ("Crothers") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed summary judgment motions [12, 18], which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Crothers is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [18] be GRANTED, Crothers' Motion for Summary Judgment [12] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

**II.    REPORT**

    **A.    Procedural History**

On July 15, 2013, Crothers filed an application for DIB, alleging disability as of June 17,

2013. (Tr. 123-129). This application was denied initially on September 6, 2013. (Tr. 63-72). Crothers filed a timely request for an administrative hearing, which was held on November 13, 2014 before ALJ Regina Sobrino. (Tr. 25-62). Crothers, who was represented by attorney Clifford Walkon, testified at the hearing, as did vocational expert Stephanie Lorey. (*Id.*). On January 29, 2015, the ALJ issued a written decision finding that Crothers is not disabled under the Act. (Tr. 12-21). On May 5, 2016, the Appeals Council denied review. (Tr. 1-6). Crothers timely filed for judicial review of the final decision on July 1, 2016. (Doc. #1).

B.  **Framework for Disability Determinations**

Under the Act, DIB benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past

2

relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

*1. Crothers' Reports and Testimony*

In an undated Disability Report, Crothers reported that she was limited in her ability to work due to arthritis, a torn rotator cuff, fibromyalgia, and chronic pancreatitis. (Tr. 147). Crothers reported living at home with her husband and two teenage daughters. She last worked in June or July 2013 at a psychiatric facility. (Tr. 29). She stopped working because "the work was too hard, and [she] knew [she] was going to be having shoulder surgery. (*Id.*). However, she testified that at this job "you still had to lift the elderly ladies. Like pivot them into a wheelchair, and that was the work that I could not do." (Tr. 30-31). Other parts of her job involved passing out medications, dressing the patients, and "meal prep." (Tr. 31).

Crothers had right shoulder surgery towards the end of July 2013. (Tr. 29). However, after the surgery her shoulder became "frozen, and [she] couldn't move it at all…" (Tr. 31). She then did physical therapy and underwent a second procedure – a "manipulation surgery" – to "unfreeze the shoulder." (Tr. 31). She stated that this made her shoulder "a little bit better," but claimed she still suffered from "a lot of pain," had "permanent nerve damage and tendon damage," and could not lift "any weight in certain ways." (Tr. 31-32). She also testified that she has significant problems standing and walking, and that her ankles feel like they are "broken."

(Tr. 32-33). She said that due to her back condition she can only sit for about 30 minutes before needing change position. (Tr. 33-34). She needs to elevate her legs several times a day. (Tr. 43).

Crothers testified that she "do[es] chores at the house," and "shop[s] for groceries," although she will bring her daughters to help her if she is shopping for heavy items. (Tr. 36). She testified that she has no hobbies, engages in no social activities, and does not visit friends or relatives. (Tr. 36-37). She drives short distances. (Tr. 37). She testified that she went to the emergency clinic in July of 2014 "for chronic pain," and was prescribed Flexeril "for muscle relaxation." (Tr. 39). She has seen a podiatrist for her foot pain, and he prescribed her "a cream." (Tr. 40). Crothers testified that she had gained about 40-45 pounds since she had stopped working, which she attributed to "[d]epression[1] and not moving." (Tr. 41).

Crothers testified that she developed pancreatitis in 2007 due to a botched gallbladder surgery. (Tr. 43-44). This resulted in a six-month hospitalization. (Tr. 44). She suffered a second bout of pancreatitis in 2011 for which she was also hospitalized. (Tr. 45). She testified that the scar tissue in her stomach and intestines causes her pain and nausea. (*Id.*). She claimed that notwithstanding these issues, she was able to work through July 2013. (*Id.*). However, the symptoms "increasingly [got] worse as the months and years [went] on." (Tr. 46). Now, simply eating causes her to become extremely bloated. (*Id.*).

2.  *Medical Evidence*

The Court has thoroughly reviewed Crothers' medical records. In lieu of summarizing that evidence here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

---

[1] Crothers testified that since she stopped working she had not seen a mental health provider. (Tr. 41).

### 3. *Vocational Expert's Testimony*

Stephanie Lorey testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 47-61). The ALJ asked the VE to imagine a claimant of Crothers' age, education, and work experience who could perform no more than light work with the additional limitations of no climbing ladders, ropes, and scaffolds, no crawling, only occasional climbing of stairs, stooping, kneeling, or crouching, no more than frequent handling, fingering, and reaching with either arm, and no reaching above chest level with either arm, and no exposure to vibration or respiratory irritants. (Tr. 48-49). The VE testified that this hypothetical person could not perform Crothers' past relevant work, but could perform other jobs which existed in the national economy, including furniture rental clerk (57,000 jobs), cashier (200,000 jobs), and copy machine operator (28,000) jobs. (Tr. 50).

The ALJ then asked whether there are sedentary jobs that someone with the foregoing limitations could perform. (*Id.*). The VE responded that there were three: touchup screener (13,000 jobs); document preparer (102,000 jobs); and order clerk (18,000 jobs). (*Id.*). The ALJ then asked the VE if the "lifting, carrying, pushing, and pulling" was further limited to no more than five pounds frequently and 10 pounds occasionally, whether the hypothetical person would be able to perform the sedentary jobs, and she answered in the affirmative. (Tr. 50-51). The ALJ also asked if such a person could perform the three "light work" jobs identified earlier by the VE, and she testified that the person could perform both the cashier and copy machine operator jobs, but that the number of available jobs would be cut in half. (Tr. 51).

The ALJ then asked whether, if the person should also be able to alternate positions for up to five minutes approximately every thirty minutes, he or she could perform the same light or sedentary jobs, and the VE answered in the affirmative. (*Id.*).

Finally, the ALJ asked whether, if the same person could reach with the dominant arm only occasionally instead of frequently, the light or sedentary jobs would still be available, and the VE answered in the affirmative but only as to the order clerk, document preparer, and copy machine operator jobs. (Tr. 52-53). The VE also identified the position of "addresser" (18,000 jobs) as one that the hypothetical person could perform with the given limitations. (Tr. 53).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Crothers has not engaged in substantial gainful activity since June 17, 2013 (the alleged onset date). (Tr. 14). At Step Two, the ALJ found that Crothers has the severe impairments of degenerative joint disease/rotator cuff disease, degenerative disc disease, fibromyalgia, chronic pancreatitis, and chronic obstructive pulmonary disease. (*Id.*). At Step Three, the ALJ found that Crothers' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then found that Crothers retains the residual functional capacity ("RFC") to perform light work except that she is limited to lifting, carrying, pushing and pulling a maximum of five pounds frequently and 10 pounds occasionally. (*Id.*). She also requires the opportunity to alternate position for up to 5 minutes approximately every 30 minutes. (*Id.*). She cannot perform any reaching above chest level and is limited to frequent reaching in other directions and frequent handling and fingering. (*Id.*). Crothers also should avoid work activity the requires exposure to vibration and concentrated exposure to pulmonary irritants. (*Id.*).

At Step Four, the ALJ determined that Crothers is unable to perform her past relevant work as a direct care worker. (Tr. 19). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Crothers is capable of performing a significant number of jobs that exist in

6

the national economy. (Tr. 20-21). As a result, he found that Crothers is not disabled under the Act. (Tr. 21).

E.  **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.    Analysis**

In her motion for summary judgment, Crothers argues that the ALJ erred by: (1) giving improper weight to his treating physician's opinion; (2) ignoring Crothers' functional limitations from her pancreatitis; (3) making an improper credibility determination; and (4) failing to establish that there is other work in the national economy that Crothers can perform. For the reasons discussed below, Crothers' arguments lack merit.

> *i.    The ALJ Did Not Err in Her Handling of the Treating Physician Opinion*

On November 14, 2013, Dr. Louis Schwartz, D.O., who treated Crothers regularly for about ten years, completed a "Medical Questionnaire" on her behalf. (Tr. 259-265). Dr. Schwartz wrote that Crothers had a "frozen shoulder" on the right with "constant pain," even at rest," which caused a decreased range of motion. (Tr. 259). He found that Crothers could not lift her right arm above a "horizontal" shoulder level without severe pain. (*Id.*) He recommended

8

that Crothers take pain medication, engage in physical therapy, and undergo a "manipulation under anesthesia," and issued her a "guarded [to] poor" prognosis. (Tr. 260). In response to a question that asked Dr. Schwartz not only *whether* he believed Crothers was "capable of performing a full-time job," but also to "state the reasons for [his] opinion," Dr. Schwartz wrote only, "No." (*Id.*).

Also on November 14, 2013, Dr. Schwartz completed a separate "Medical Assessment of Ability to Do Work Related Activities (Physical)," in which he indicated that Crothers suffered from a frozen right shoulder, chronic pancreatitis, and hyperlipidemia. (Tr. 263). Dr. Schwartz noted that Crothers had a markedly decreased range of motion in her right arm, as well as chronic abdominal pain related to her pancreatitis. (*Id.*). He opined that Crothers could not lift or carry any amount of weight. (*Id.*). However, he found that she could sit, stand, or walk without limitation. (Tr. 264). He opined that Crothers could not reach, grasp, turn, or twist objects with her right hand, and would only be able to perform fine manipulation for up to two hours per workday. (Tr. 264). He imposed no limitations with respect to Crothers' left hand. (*Id.*). Dr. Schwartz also opined that Crothers needed no unscheduled breaks, could "frequently" perform all postural positions (including bending, squatting, and turning her head), but could not climb ladders. (Tr. 264-65). He indicated, however, that Crothers' pain would "constantly" interfere with the attention and concentration needed to perform even simple work tasks. (Tr. 265).

Crothers argues that the ALJ erred by giving only "limited weight" to Dr. Schwartz's opinions. But this argument lacks merit because the ALJ gave good reasons for doing so, and those reasons are supported by the record evidence.

The treating physician rule generally requires that greater deference be given to treating physicians than to non-treating physicians. *Rogers,* 486 F.3d at 242 (citing Soc. Sec. Rul.

that Crothers take pain medication, engage in physical therapy, and undergo a "manipulation under anesthesia," and issued her a "guarded [to] poor" prognosis. (Tr. 260). In response to a question that asked Dr. Schwartz not only *whether* he believed Crothers was "capable of performing a full-time job," but also to "state the reasons for [his] opinion," Dr. Schwartz wrote only, "No." (*Id.*).

Also on November 14, 2013, Dr. Schwartz completed a separate "Medical Assessment of Ability to Do Work Related Activities (Physical)," in which he indicated that Crothers suffered from a frozen right shoulder, chronic pancreatitis, and hyperlipidemia. (Tr. 263). Dr. Schwartz noted that Crothers had a markedly decreased range of motion in her right arm, as well as chronic abdominal pain related to her pancreatitis. (*Id.*). He opined that Crothers could not lift or carry any amount of weight. (*Id.*). However, he found that she could sit, stand, or walk without limitation. (Tr. 264). He opined that Crothers could not reach, grasp, turn, or twist objects with her right hand, and would only be able to perform fine manipulation for up to two hours per workday. (Tr. 264). He imposed no limitations with respect to Crothers' left hand. (*Id.*). Dr. Schwartz also opined that Crothers needed no unscheduled breaks, could "frequently" perform all postural positions (including bending, squatting, and turning her head), but could not climb ladders. (Tr. 264-65). He indicated, however, that Crothers' pain would "constantly" interfere with the attention and concentration needed to perform even simple work tasks. (Tr. 265).

Crothers argues that the ALJ erred by giving only "limited weight" to Dr. Schwartz's opinions. But this argument lacks merit because the ALJ gave good reasons for doing so, and those reasons are supported by the record evidence.

The treating physician rule generally requires that greater deference be given to treating physicians than to non-treating physicians. *Rogers,* 486 F.3d at 242 (citing Soc. Sec. Rul.

("SSR") 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 544). "Generally, the opinions of treating physicians are given substantial, if not controlling, deference," but they "are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner*, 375 F.3d at 390 ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). "A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)); *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004) (citing *Warner*, 375 F.3d at 390; 20 C.F.R. § 404.1527(d)(2)).

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it by considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record

as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2) (establishing that the ALJ must "give good reasons" for weight given to treating source opinion)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-51 (6th Cir. 2010) (citing *Rogers,* 486 F.3d at 242).

Crothers argues that "[t]he only explanation provided by the ALJ for giving 'limited weight' to this opinion is that another doctor, namely, Dr. [Inocencio] Cuesta at Botsford Rheumatology, on September 30, 2014, indicated that [Crothers] had a normal range of motion of the neck, back, shoulders, knees, and ankles." (Doc. #12 at 13) (citing Tr. 19, 371-375). But Crothers' assertion that this was the ALJ's "only" explanation for discounting Dr. Schwartz's opinion is far from accurate. Indeed, as Crothers admits later in her argument, the ALJ also discounted Schwartz's opinion because she found that the "objective medical evidence provided does not contain support for disabling symptoms and reveals a level of impairment consistent with light work, although with additional limitations." (Tr. 19). The ALJ went well beyond this statement, too, noting that "[a] *recent* physical examination by Dr. Cuesta on September 30, 2014 revealed a normal range of motion in [Crothers's] cervical, thoracic and lumbar spine and throughout her upper and lower extremities. Dr. Cuesta also noted a normal range of motion in [Crothers'] shoulders, knees, ankles, feet and hand/wrists. These clinical findings, as well as the

11

progress notes and diagnostic test results, do not support the assessments provided by Dr. Schwartz." (Tr. 19) (emphasis added). Additionally, the ALJ noted that after her two shoulder procedures, Crothers' "impairments have responded to and remained stable with treatment." (*Id.*). While the ALJ perhaps could have articulated this analysis more clearly, he made clear enough that he discounted Dr. Schwartz's opinions because he rendered them *before* Crothers' March 2014 "shoulder manipulation procedure," and because the progress and treatment records that followed were inconsistent with Dr. Schwartz's pre-procedure findings. The ALJ's conclusions in this regard are supported by the record evidence.

Indeed, the ALJ provided a very even review of the medical record. The ALJ began by noting that Crothers' shoulder impairments were serious, not improving with conservative treatment, and required surgery in July 2013. (Tr. 16-17).[2] The ALJ also noted that although Crothers "tolerated the procedure well," she still was experiencing pain and a had "frozen shoulder." (Tr. 17). The ALJ noted that on March 25, 2014, months after Dr. Schwartz issued the opinions in question, Dr. Arun George Dass performed a "shoulder manipulation procedure" to address Crothers' frozen shoulder. (Tr. 17, 268).

The ALJ then appropriately noted that records showed this procedure was successful, and that subsequent medical records revealed normal findings, or, in most cases, that Crothers did not even complain about her shoulder being an issue. (Tr. 17, 19). First, the ALJ appropriately noted that Crothers tolerated this second procedure well, and that thereafter "she exhibited a full passive range of motion and no crepitus in her right shoulder . . ." (Tr. 17, 268). The ALJ also

---

[2] There is also no doubt that Crothers' right shoulder problems began at least about a few months earlier, as evidenced by Dr. Schwartz's March 21, 2013 treatment note in which he diagnosed "a small partial thickness tear of the supraspinatus tendon." (Tr. 276). However, Crothers testified that she worked up until shortly before her first shoulder surgery in July 2013, and has an alleged onset date of June 17, 2013.

12

noted that about five weeks later, on May 5, 2014, Dr. Dass found Crothers was "doing well" overall and was "better," although she still "had pain requiring Norco 10 mg." (Tr. 17, 366). In addition, Dr. Dass prescribed Crothers additional physical therapy, and noted that her "[m]aximum medical improvement may take up to 2 years." (Tr. 366). Dr. Dass also noted that her shoulder's stiffness and weakness was "moderate" but "better." (Tr. 367). Finally, Dr. Dass also found that she exhibited 5/5 strength in her right upper extremity, with "normal" stability, and that Crothers' right hand was "normal" in all respects, with 5/5 strength. (Tr. 369).

Second, and perhaps even more importantly to the validity of the ALJ's weighing of Dr. Schwartz's November 2013 opinions, the ALJ appropriately considered that doctor's progress/treatment notes from the months following Crothers' March 2014 shoulder manipulation procedure. (Tr. 19; *see also infra* n.4). After that procedure Crothers saw Dr. Schwartz seven times: on April 9; May 1; May 14; June 5; July 8; August 7; and September 2, 2014. (Tr. 295-307). Although in her first visit to Dr. Schwartz, which was only about ***two weeks after*** Crothers' March 2014 procedure, Crothers had some upper extremity range of motion difficulties, this was the only such instance where Dr. Schwartz noted such a finding. (Tr. 306). Even then, Dr. Schwartz wrote that Crothers' range of motion in her right shoulder had improved after the manipulation procedure. (*Id.*). In the other (subsequent) six visits, Dr. Schwartz only examined Crothers' shoulder one time (the May 14, 2014 visit), and he never recorded any abnormal findings in her upper extremities. (Tr. 295-303). The record contains no later MRI or similar medical evidence of a problem with Crothers' shoulder. In short, it was appropriate for the ALJ to discount Dr. Schwartz's November 2013 opinions about Crothers' shoulder when Dr. Schwartz issued that opinion before Crothers' March 2014 manipulation procedure which was successful enough that she largely made no further complaints to the doctor

13

about her shoulder when she saw him for treatment.³

Finally, the ALJ also noted that on September 30, 2014, Crothers saw Dr. Inocencio Cuesta, a rheumatologist, as a returning patient (with her last visit having been in 2012). (Tr. 18-19, 371). The ALJ correctly found that this more "recent" record of Dr. Cuesta's called into question Dr. Schwartz's earlier, pre-manipulation procedure opinions. (Tr. 19). Dr. Cuesta noted that Crothers presented with complaints of "pain in [her] feet, ankles, [and] elbow." (Tr. 18-19). However, Dr. Cuesta's treatment record indicates that he found Crothers' shoulders exhibited "a normal range of motion." (*Id.*).

In sum, the ALJ evenly reviewed the evidence, and made clear the reasons why she determined that Dr. Schwartz's November 2013 opinions were only entitled to "limited," rather than "controlling" weight. As those reasons are supported by substantial evidence in the record Crothers' argument that the ALJ violated the treating physician rule lacks merit.

      b.  *The ALJ Did Not Err in Her Handling of Crothers' Pancreatitis*

Crothers next argues that the ALJ ignored that she has functional limitations caused by her pancreatitis. (Doc. #12 at 15). In short, Crothers notes her testimony in which she described the botched gallbladder surgery which led to a "bile leak," and her resulting pancreatitis that has worsened over the years. (*Id.*). She also references doctors' treatment records which confirm she suffers from the condition and that it can cause her to have a markedly distended abdomen.

---

³ In arguing against this conclusion, Crothers misconstrues the proper inquiry. The question is not whether the manipulation procedure *completely* fixed Crothers' shoulder such that she did not even require any pain medication or physical therapy in order to reach her maximum medical improvement. (Doc. #19 at 2). Rather, the question is whether the ALJ's decision to not fully credit Dr. Schwartz's November 2013 opinion is supported by good reasons and substantial evidence in the record. Moreover, contrary to Crothers' assertion that "nothing specific is given by the ALJ as to why Dr. Schwartz's progress notes and testing are inconsistent with his opinions" (Doc. #12 at 13), the ALJ specifically indicated that she was referring to the fact that Crothers' "impairments have responded to and remained stable with treatment." (Tr. 19). The foregoing treatment notes constitute substantial evidence in support of that finding.

14

(*Id.* at 16; Tr. 302, 304).

The issue, however, is not whether Crothers has established that she suffers from pancreatitis – indeed, the ALJ found her "chronic pancreatitis" to be a "severe" impairment at Step Two. (Tr. 14). Rather, because "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual," *McKenzie v. Comm'r, Soc. Sec. Admin.*, 215 F.3d 1327 (6th Cir. 2000), Crothers had the burden of proving the existence and severity of the ***functional limitations*** caused by her pancreatitis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). *See,* 20 C.F.R. § 416.912(c) (claimants bear the responsibility of providing evidence showing how their impairments affect their ability to work). As discussed below, the ALJ did not err in her assessment of this issue because Crothers failed to present evidence that her pancreatitis caused functional limitations greater than those imposed by the ALJ.

Based on all of Crothers' severe and non-severe impairments, the ALJ imposed numerous functional limitations on her ability to work, including that she perform no more than light work, with the additional limitations that she lift, carry, push and pull no more than five pounds frequently and ten pounds occasionally. (Tr. 15). She also imposed a restriction that allowed Crothers "the opportunity to alternate position for up to 5 minutes approximately every 30 minutes." (*Id.*). While Crothers argues that her pancreatitis is accompanied by daily nausea and pain and fatigue so severe that she must lie down (Tr. 45), as the ALJ noted, she had no recent hospitalizations related to this condition, and the medical records simply do not support these alleged functional limitations.

Dr. Schwartz's "Medical Questionnaire" is directed solely to Crothers' shoulder issues. (Tr. 259-60). And, while his "Medical Assessment of Ability to Do Work Related Activities

15

(Physical)" does reference Crothers' "chronic pancreatitis," he makes no mention of it causing her to be dizzy or need to lie down, as Crothers alleges, and does not assign any specific functional limitations based on this condition. (Tr. 263-65). To the contrary, Dr. Schwartz opined that Crothers would not need to take unscheduled breaks/rest periods during the work day, that she would have no trouble standing, walking, or sitting, and that she could frequently twist, stoop, and crouch/squat. (Tr. 264-65). And, contrary to Crothers' testimony that she needs to elevate her legs several times each day (Tr. 43), Dr. Schwartz specifically opined that even with prolonged sitting, Crothers would not need to elevate her legs. (Tr. 264).

For all of the foregoing reasons, Crothers simply has not shown an error by the ALJ with respect to her handling of Crothers' chronic pancreatitis.

### c. *Crothers' Credibility Argument Lacks Merit*

Crothers next argues that the "ALJ's credibility finding is flawed to the extent it ignores Social Security Ruling ("SSR") 96-7p and 20 C.F.R. § 404.1529." (Doc. #12 at 17). Crothers accuses the ALJ of using "boilerplate language" and "not stat[ing] why [she] is not credible." (*Id.*). She claims the ALJ "dismiss[ed] [her] credibility based on a boilerplate determination that was result-oriented, stating that her testimony was only credible to the extent it was consistent with the ALJ's RFC finding." (*Id.*). While it would have been preferable had the ALJ more explicitly discussed the evidence as it relates to her credibility finding, overall her decision is adequate to make clear to any reader why she discounted Crothers' credibility.

Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination

will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider other evidence of pain, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, it is true that the ALJ wrote that although Crothers' "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 16). However, as the Commissioner points out, the mere inclusion of this "boilerplate" language by an ALJ "to introduce [her] credibility finding is not by itself erroneous." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir. 2016). While the ALJ did not specifically tie her discussion of the record back to Crothers' credibility, the ALJ's extensive and even discussion of the record made clear to Crothers the basis for her credibility determination.

As discussed above, with respect to Crothers' shoulder, the ALJ fairly and thoroughly evaluated the evidence, noting that although Crothers' initial conservative treatment was inadequate, and her first surgery left her with a "frozen shoulder," after her subsequent manipulation procedure, the records indicated normal range of motion and that in most all instances Crothers was not complaining to her doctors about issues with her shoulder. *See supra* at 12-14. This evidence is inconsistent with Crothers' testimony about her ongoing shoulder

17

complaints, *see supra* at 3, and it supports the ALJ's credibility determination. See SSR 96-7p, WL 374186 at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Similarly, whereas Crothers testified about having significant problems sitting, standing and walking, *supra* at 3-4, as discussed above, the ALJ noted that "Dr. Schwartz noted no restrictions with regard to sitting, standing or walking." (Tr. 19, 264). Dr. Schwartz's opinion also directly contradicted Crothers' testimony that she needed to elevate her legs several times each day. (*Cf.* Tr. 43 and 264).

Moreover, the ALJ did not entirely dismiss Crothers' complaints. To the contrary, she recognized that Crothers "continues to experience pain symptoms in her right shoulder, joints and back. . . . [and] continues to take pain medication." (Tr. 18). Accordingly, the ALJ adopted an RFC more restrictive than the one suggested by the Disability Determination Service's reviewing physician, Dr. Myung Ho Hahn. (Tr. 18). This RFC included significant limitations on the amount of weight Crothers could lift (5 pounds frequently and 10 pounds occasionally), and restricted her from lifting "any reaching above chest level," among other restrictions. (Tr. 15).[4]

For all of the foregoing reasons, Crothers has not shown a basis for overturning the ALJ's credibility determination.

> d. *Crothers' Argument about an Improper VE Hypothetical Lacks Merit*

Crothers' final argument essentially repackages her initial argument about the ALJ's handling of Dr. Schwartz's opinions. Crothers argues that the ALJ's hypothetical question to the

---

[4] While the foregoing is sufficient to uphold the ALJ's credibility determination, the Court notes Crothers' hearing testimony that she stopped working because "the work was too hard . . . you still had to lift the elderly ladies. Like pivot them into a wheelchair, and **that was the work that I could not do.**" (Tr. 30-31) (emphasis added). Crothers did not express an inability to handle her work's less physically demanding duties, such as passing medications, dressing patients, and meal preparation. (Tr. 31).

18

VE was flawed because it did not entirely preclude the use of her right arm due to her frozen shoulder or the manipulative limitations included in Dr. Schwartz's November 2013 opinions. (Doc. #12 at 19-20). This argument lacks merit. An ALJ is only required to include in the hypothetical question posed to the VE the limitations that she finds credible. *See Elliot v. Comm'r of Soc. Sec.*, No. 14-10870, 2015 WL 904990, at *10 (E.D. Mich. Mar. 3, 2015) ("[i]n a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record...."); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

The Commissioner is correct that, "[b]ecause the ALJ properly discounted the medical opinions of [Dr. Schwartz], [s]he also properly excluded the limitations assessed by [Dr. Schwartz] from the hypothetical question." *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). *See also Hill v. Comm'r of Soc. Sec.*, 558 Fed. App'x. 535, 536 (6th Cir. 2014) ("Because the ALJ's RFC determination was supported by substantial evidence, Hill has not demonstrated that the ALJ failed to ask proper hypothetical questions to the vocational expert or that the ALJ erred by relying on the expert's opinion"). And, for the reasons stated above, Crothers has not shown that the ALJ was required to include any additional limitations in the hypothetical questions posed to the VE.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

for Summary Judgment [18] be GRANTED, Crothers' Motion for Summary Judgment [12] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: August 11, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2017.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager